J-A21038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| POST RIVER ROAD, LLC, POST RIVER ROAD URBAN RENEWAL, LLC AND DUCHESS NJ LLC | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1317 EDA 2021 |
| ASPEN SPECIALTY INSURANCE COMPANY | : : : | |

Appeal from the Order Entered May 25, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190606725

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED NOVEMBER 1, 2022**

Post River Road, LLC, Post River Road Urban Renewal, LLC, and Duchess NJ LLC (collectively, Appellants) appeal from the order entered in the Philadelphia Court of Common Pleas, denying their motion to compel appraisal.[1] Appellants filed a complaint against their insurer, Aspen Specialty Insurance Company (Appellee), concerning insurance coverage for their claim of "soft costs," and subsequently filed a motion to compel appraisal concerning claims for other expenses. On appeal, Appellants aver the trial court: (1)

---

[1] As we discuss **infra**, for purposes of enforceability a petition to compel appraisal will be treated like a petition to compel arbitration. **McGourty v. Pa. Millers Mut. Ins. Co**., 704 A.2d 663, 664 (Pa. Super. 1997) (*per curiam*).

erred in confusing the claims they intended to separately pursue through appraisal and their complaint; and (2) misinterpreted the language of the insurance policy that governs when an appraisal may be demanded. We determine the certified record does not show whether the trial court fully considered these issues. Thus, we vacate the order and remand for further consideration.

## I. Appealability of Order Denying Motion to Compel Appraisal

We first consider the appealability of the underlying order; Appellants have raised this issue in their statement of questions involved. "It is well-settled that . . . an appeal may only be taken from an interlocutory order as of right (Pa.R.A.P. 311), from a final order (Pa.R.A.P. 341), from a collateral order (Pa.R.A.P. 313), or from any interlocutory order by permission (Pa.R.A.P. 312[,] 1311, 42 Pa.C.S.A. § 702(b))." **TTSP Corp. v. Rose Corp.**, 217 A.3d 1269, 1277 (Pa. Super. 2019) (some citations and quotation marks omitted). Rule 311 provides, *inter alia*, that an interlocutory appeal may be taken as of right from an order that is made appealable by statute. **TTSP Corp.**, 217 A.3d at 1277, *citing* Pa.R.A.P. 311(a)(8). Section 7320 of the Judicial Code, in turn, states that an appeal may be taken from an "order denying an application to compel arbitration[.]" 42 Pa.C.S. § 7320(a)(1).

This Court has stated,

Both the appraisal and arbitration process are intended as alternatives to litigation whereby the parties submit the issues in dispute to an independent counsel for resolution. The only distinction between arbitration and appraisal is the scope of

issues . . . . An appraisal is limited to determining the amount of the loss with all other issues reserved for settlement by either negotiation or litigation, while arbitration considers all issues necessary for disposition of the entire controversy between the parties. For purposes of enforceability, there is no distinction between arbitration and appraisal.

*McGourty*, 704 A.2d at 664 (citations omitted).

Construing the above principles together, we conclude the underlying order denying Appellants' motion to compel appraisal is immediately appealable, and this Court may properly exercise jurisdiction over this appeal. *See* 42 Pa.C.S. § 7320(a)(1); *McGourty*, 704 A.2d at 664. *See also Prof'l, Inc. v. Mut. Ben. Ins. Co.*, 1155 WDA 2019 (unpub. memo. at 12-13) (Pa. Super. Nov. 17, 2020) (citing *McGourty* and concluding order denying request to compel appraisal was immediately appealable).[2]

## II. Facts & Procedural History

Appellants are four developers of a large apartment complex in North Bergen, New Jersey.[3] The complex was insured by Appellee insurance company. The parties' insurance policy contained the following appraisal provision:

---

[2] *See* Pa.R.A.P. 126(b)(2) (non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value).

[3] Trial Ct. Op., 2/4/22, at 1. Post River Road, LLC and Duchess NJ LLC have principal places of business in Pennsylvania. Appellants' Complaint, 6/20/19, at ¶¶ 8, 10. Post River Road Urban Renewal, LLC is a wholly owned subsidiary of Post River Road, LLC. *Id.* at ¶ 9.

If [Appellants] and [Appellee] **fail to agree as to the amount of loss**, each shall, on the written demand of either, **made within 60 days after receipt of proof of loss** by [Appellee], select a competent and disinterested appraiser, the appraisal shall be made at a reasonable time and place.

Commercial Property Insurance Policy (undated) at 14 (emphases added), Exh. 1 to Appellants' Complaint, 6/20/19.

On January 3, 2018, a pipe burst at the apartment building, and "[w]ater flooded into parts of the building which were already completed and occupied[,]" as well as into unfinished and unoccupied apartments. Trial Ct. Op. at 2.

"A major issue between the parties is" is the coverage or categorization of what the parties have termed "soft costs," defined by Appellants to include mortgage interests, payroll, insurance, real estate taxes, and advertising expenses. Trial Ct. Op. at 2; Appellants' Complaint at 5, 7. Appellants aver "soft costs" merit their own line item, **separate** from "business costs," and submitted claims to Appellee of $3,082,860.74 for "soft costs." ***See*** Appellant's Complaint at 7. Appellee, on the other hand, contends that "soft costs" "should be calculated **within** [the] line item designated 'business costs[.]" Trial Ct. Op. at 2 (emphasis added). On April 16, 2019, in a "Partial Declination of Coverage" letter, Appellee authorized payment of $256,531 for "business costs." Trial Ct. Op. at 2-3.

Meanwhile, we glean the following from the exhibits to the parties' pleadings. Appellants also submitted claims of: (1) $1,427,181.26 for lost

rents; (2) $125,006.18 for "extra expenses;"[4] and (3) other enumerated expenses. Letter from Appellants to Crawford Global Technical Services, 2/5/19, at 2, Exh. 6 to Appellants' Complaint. In the April 16, 2019, "Partial Declination of Coverage" letter, Appellee listed the same claims — together with Appellant's "soft costs" claim —under the heading "Time Element." Appellee's Partial Declination of Coverage Letter, 4/16/19, at 2, Exh. 10 to Appellants' Complaint. Appellee informed Appellants that its "investigation has determined that the total covered loss for [this] time element claim was already paid in the amount of $256,531." *Id.*

Shortly thereafter, on June 20, 2019, Appellants filed a complaint against Appellee, averring breach of contract and bad faith for failure to fully pay for "soft costs." Paragraph 50 of the complaint stated: (1) the parties also disputed the proper amounts of "Rental Loss and business income loss;" (2) the insurance policy provided that all disagreements over the amount of loss only were to be submitted to appraisal; and thus (3) Appellants would pursue this disagreement separately through appraisal. Appellants' Complaint at 12.

Six months later, on December 20, 2019, Appellants "made [their] first demand for appraisal in a letter." Trial Ct. Op. at 3.

---

[4] The policy defined "extra expenses" as those "necessarily incurred for the purpose of reducing loss[,] including those expenses in excess of those the insured would have incurred had there been no loss." N.T., 5/19/21, at 6-7.

- 5 -

> [Appellee] acknowledged the letter on January 17, 2020[,] but did not state any definite position.  For another 7 months, [Appellants] took no further steps to seek an appraisal.  [Appellants] continued litigation in preparation for trial[, which] included discovery[,] discovery hearings and . . . adjudication of [Appellants'] partial summary judgment motion which [was] denied on March 10, 2021[.]

*Id.*

On August 12, 2020, Appellants filed, at the same docket as their complaint, a motion to compel appraisal of rental loss and "extra expenses," contending that despite several communications, Appellee had not yet agreed to appraisal on these claims.  Appellants reiterated, in its accompanying memorandum of law, that because the only issue over rental loss and "extra expenses" was the amount of loss, appraisal was appropriate.  This motion did not refer to "soft costs," which was the issue raised in Appellants' complaint.  The motion was improperly docketed as a discovery motion.  Appellants then filed a "Renewed Motion" to compel appraisal on February 15, 2021 — identical to the first motion — "which was accepted by [the trial court's] civil protonotary with a motions control number."  Trial Ct. Op. at 4.

On March 2, 2021, Appellee filed a reply to the motion to compel appraisal.  Pertinently, it contended Appellants' demand for an appraisal was not ripe, where: (1) Appellants had not filed a proof of loss for the claim, as required by the terms of the policy; and thus (2) "the conditions precedent for an appraisal have not been satisfied[.]"  Appellee's Opposition to Appellants' Motion to Compel Appraisal at 5.  Appellees also referred to the parties'

disagreement over coverage for "soft costs," stating "any Soft Costs incurred by the loss were reimbursed as part of [Appellee's] payment towards the Claim." *Id.* at 3. To this end, Appellee averred "all of" Appellants' issues related to the question of **coverage** and thus were beyond the scope of appraisal, which is limited solely to disputes over the **amount** of loss. *Id.* at 5.

On May 19, 2021, the trial court conducted a brief hearing on Appellants' motion to compel appraisal.[5] Appellants continued to argue the parties did not "dispute that there is coverage for rental loss and extra expense[,] the only dispute [is] the amount of loss," and thus the issue should be submitted to appraisal. N.T., 5/19/21, at 5. The trial court asked what "extra expenses" were, and Appellants explained that under the policy, they were expenses "necessarily incurred for the purpose of reducing loss[,] including those expenses in excess of those the insured would have incurred had there been no loss." *Id.* at 6-7. The trial court responded as follows:

> THE COURT: So exactly how do you presume that that's going to be done without a trial?
>
> [Appellants]: It goes to appraisal.
>
> THE COURT: No, . . . that's not happening here. You're not going to put the cart before the horse. That's not happening here. We are going to have a trial on what the expenses would have been versus what they might have been. We're not going to farm this

---

[5] The transcript for this hearing spanned 11 pages, inclusive of the cover page and list of counsel appearances.

out to an appraiser before there's some factual issues that need to be decided. . . .

*Id.* at 7.

Appellee then argued the following: its forensic accountant determined there was approximately $256,000 in lost rents, and "[t]he dispute as to the remaining amounts is a coverage issue[,] which is beyond the purview of an appraisal." N.T. at 7-8. However, the trial court asked if Appellee conceded the policy required it to pay "for, quote, unquote, other expenses[,]" and Appellee replied, "**Yes**, extra expenses." *Id.* at 8 (emphasis added). The following exchange thereafter ensued:

THE COURT: So the dispute, from your vantage point, is exactly what's covered by this terminology of other expenses, am I right?

[Appellee]: Correct.

THE COURT: And so at the end of the day that's the jury question, correct?

[Appellee]: Correct.

THE COURT: So why are we putting the cart before the horse, [Appellants]?

[Appellants]: Because, Your Honor, I think that the issue is not the coverage for the rental loss or the extra expense because [Appellee has] admitted it's covered; it's how much is the extra expense lost and how much is the rental loss?

THE COURT: I'm going to let a jury decide that[.]

*Id.* The court thus denied Appellants' motion to compel appraisal. Appellants timely appealed.[6]

### III. Trial Court Opinion

In its opinion, the trial court stated the following grounds for denying Appellants' motion for appraisal. First, Appellants failed to demand an appraisal within 60 days "after receipt of proof loss by" Appellee, as required by the terms of the policy. Trial Ct. Op. at 5. The court reasoned: the trigger date to seek an appraisal "was April 16, 2019, when [Appellee] awarded $256,531 and [Appellants] believed [they were] entitled to more — namely soft costs which [Appellee] had subsumed." *Id.* at 4, 5.

Second, the trial court found the parties' dispute — "whether 'soft costs' are to be evaluated as separate coverage . . . when 'business costs' are paid" — was not within the scope of the appraisal provision. Trial Ct. Op. at 6. Finally, the court concluded Appellants waived their demand for an appraisal by, *inter alia*, accepting judicial process, by filing a complaint and a motion for summary judgment, requesting a jury, and taking discovery. *Id.* at 7.

The trial court also addressed Paragraph 50 of Appellants' complaint, which stated they would separately "contest [Appellee's] lowball estimates for Extra Expense, Rental Loss and business income through appraisal." Trial Ct.

---

[6] The trial court did not direct Appellants to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Op. at 7. The court reasoned Appellants' bad faith claim "alleged failure to pay both soft costs and business costs before actually demanding an appraisal," and thus they "appear[ ] to have used the court process with sleight of hand." *Id.* at 7.

## IV. Questions Presented

Appellants present four related issues for this Court's review:[7]

[1.] Is the Trial Court's Order denying [Appellants'] Motion to Compel Appraisal immediately appealable as of right?

[2.] Did the Trial Court err in denying [Appellants'] Motion to Compel Appraisal when the only issue was the amount of rental loss and extra expense loss?

[3.] Did the Trial Court err in holding that [Appellants] waived the right to demand appraisal under the insurance policy?

[4.] Did [Appellants] timely demand appraisal?

Appellants' Brief at 4.

## V. Standard of Review & Relevant Authority

As stated above, for purposes of enforcement, we treat a motion to compel appraisal like a motion to compel arbitration. This Court has stated:

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration[: (1)] whether a valid agreement to arbitrate exists[; and (2)] whether the dispute is within the scope of the agreement.

---

[7] We have reordered the issues for ease of review. The first issue has been resolved above.

> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." "These are questions of law and our review is plenary."
>
> Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

*Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012) (citations omitted).

## VI. Parties' Arguments – Appraisal v. Litigation

In their second issue, Appellants argue the trial court erred in: (1) misidentifying the issue raised in their motion to compel appraisal; and (2) finding it fell outside the scope of the policy's appraisal provision. Appellants' Brief at 19. Appellants maintain they are pursuing two discrete claims through separate avenues: (1) the dispute over the **amount** of their rental and "extra expenses" losses, which should be submitted to appraisal; and (2) the question of whether "soft costs" are to be **covered** separately from business costs, which is the subject of its complaint. *Id.* at 20. Appellants maintain the first issue "falls squarely within the appraisal provision of the insurance policy," where Appellee admitted "it owed coverage for rental loss and extra expenses and paid what it calculated as the [proper] amount of those losses[.]" *Id.* at 20, 21. Appellants then contend the trial court mistakenly

believed it was the latter issue that is the subject of their demand for appraisal. *Id.* at 19-20.

Appellee responds that contrary to Appellants' "bald assertions," it "has not admitted coverage for the Total Claim," which Appellee defines to mean "soft costs," lost rent, **together with** "extra expense[s]."[8] Appellee's Brief at 6-7, 21. Appellee cites the trial court's summation of the issue to be "what is or is not lost rent, loss of business income or extra expense[.]" *Id.* at 20-21, *citing* N.T. at 7 ("We are going to have a trial on what the expenses would have been versus what they might have been."). Thus, Appellee claims, the trial court properly determined the underlying issue goes to the question of coverage, not the valuation of loss, and is therefore outside the appraisal provision. Appellee's Brief at 18.

We remand for the trial court's further consideration of the above arguments.

## VII. Analysis: Appraisal v. Litigation

After careful review of the record, we observe multiple irregularities and unanswered issues in this matter. First, we reiterate Appellants' central argument — that the trial court conflated their claims for "soft costs," which are the subject of their complaint, with rental loss and "extra expenses," which

---

[8] Appellee also includes Appellants' claims for "temporary housing," "loss adjusting fees," and "loss to lease" in their reference to "Total Claim." Appellee's Brief at 6-7.

is wholly **unrelated** to the complaint. The pleadings, however, do not explain why Appellants filed their motion to compel appraisal at the same docket as their complaint. In essence, Appellants sought a judicial order compelling appraisal for issues and/or costs that they vehemently aver are **not** at issue in this litigation. Since Appellants concede that the relief sought in their pleadings is confined to "soft costs," we are not sure why **any** relief or argument, for any damages not agreed to be "soft costs," should be entertained in this litigation.[9]

Next, we observe the parties seem unable to agree on a preliminary issue — which costs fall into which category — and the trial court has not made any findings thereto.[10] The question of how "soft costs," lost rent, and "extra expenses" cannot be meaningfully resolved cannot be considered until there is a prefatory agreement — or finding by the trial court — as to what these categories are comprised of. At the hearing, as stated above, the trial court asked what "extra expenses" were, but Appellants did not cite any specific examples, and instead broadly and vaguely stated "extra expenses"

_____

[9] We emphasize that in the absence of any discussion on this issue, we offer no opinion as to whether Appellants' filing at the same docket was proper; we merely point this out as an unaddressed issue.

[10] There also appear to be additional categories of expenses, including "temporary housing," "loss adjusting fees," and "loss to lease." ***See, e.g.*** Letter from Appellants to Crawford Global Technical Services, 2/5/19, at 2, Exh. 6 to Appellants' Complaint.

were expenses "necessarily incurred for the purpose of reducing loss[,] including those expenses in excess of those the insured would have incurred had there been no loss." N.T. at 6-7. The court responded:

> You're not going to put the cart before the horse. . . . We are going to have a trial on what the expenses would have been versus what they might have been. We're not going to farm this out to an appraiser before there's some factual issues that need to be decided.

N.T. at 5, 7.

Meanwhile, in response to consecutive questions posed by the trial court, Appellee first concedes the policy covers "extra expenses," but then appears to contradict itself by noting what constitutes an "extra expense" is a question for the jury:

> THE COURT: . . . Do you concede that there is a clause in [the policy] that obligates [you] to pay for, quote, unquote, other expenses?
>
> [Appellee]: Yes, extra expenses.
>
> THE COURT: So the dispute, from your vantage point, is exactly what's covered by this terminology of other expenses, am I right?
>
> [Appellee]: Correct.
>
> THE COURT: And so at the end of the day that's the jury question, correct?
>
> [Appellee]: Correct.

*See* N.T. at 8.

However, to the extent the trial court opined the jury should decide how each of the numerous expenses in this complex matter should be categorized,

we emphasize the interpretation of a contract, including the definition of terms therein, is a question of law. *See Miller v. Poole*, 45 A.3d 1143, 1145 (Pa. Super. 2012).

In addition to the lack of any finding as to the categorization of claims, the trial court's opinion is entirely unclear as to whether it agrees with Appellants' argument, that their two pleadings — the complaint and motion to compel appraisal — pursued distinct and unrelated claims. As stated above, in Appellee's reply to the motion to compel, it asserted that Appellants' claim for lost rent concerned coverage and thus was beyond the scope of appraisal, which was limited to disputes over the amount of coverage. Appellee's Opposition to Appellants' Motion to Compel Appraisal at 5.

First, **consistent** with Appellants' position, the trial court summarizes that: (1) the complaint concerns the parties' dispute as to whether "soft costs" is a part of, or should be separate from, "business costs; while (2) Appellants would contest, through appraisal, Appellee's "lowball estimates for Extra Expense, Rental Loss, and business income loss through appraisal." Trial Ct. Op. at 2, 7.

Other portions of the trial court's opinion, however, group together "soft costs" with lost rents and "extra expenses," **contrary** to Appellants' position. For example, the court states: "[Appellee] claims that by paying $256,531 **for rental loss**, it has no obligation to cover [Appellants'] **soft cost** insurance and mortgage payments." Trial Ct. Op. at 3 (emphases added). The court

also suggests Appellants are pursuing the same issues in their complaint and motion to compel appraisal, in stating Appellants' complaint improperly raised a "bad faith claim [for] failure to pay both **soft costs and business costs** before . . . demanding an appraisal." *Id.* at 7. Finally, the court found Appellants have waived appraisal by availing themselves of the judicial process, by commencing this lawsuit, taking discovery, and filing a motion for summary judgment.[11] *Id.* This last statement presumes that Appellants are seeking to litigate the same issues through its complaint and appraisal.

In light of the brevity of the transcript hearing, the parties' arguments, and the trial court's opinion, we cannot determine on this record whether the trial court in fact accepted Appellants' contention that they are pursuing "soft costs" only through court litigation while separately demanding appraisal for the distinct and discrete issue, which is the proper valuation of "lost rents" and "extra expenses." It is also not clear how the court ruled on the parties' competing arguments as to whether they agreed lost rents and "extra expenses" are covered by the policy. If the court found the parties had not agreed, the court's reasons are not apparent from the record. *See* N.T. at 8. Perhaps adding to this uncertainty is the apparent lack of any finding by the court as to which expenses constitute a rental loss, "extra expense," 'soft

---

[11] We note, however, Appellants' motion for partial summary judgment concerned the issue of coverage for **soft costs** only. *See* Appellants' Motion for Partial Summary Judgment, 10/21/20, at 1-8.

cost," or other type of claim. These issues must be resolved before the court can determine whether the claim is within the scope of an appraisal provision. *See Elwyn*, 48 A.3d at 461.

Accordingly, we vacate the order denying Appellants' motion for appraisal and remand for reconsideration. The court shall address specifically whether the issues raised in Appellants' motion to compel appraisal are distinct from those in the complaint, and if so, whether the former are properly within the scope of the appraisal provision. The court shall also determine how each line-item expense is to be categorized — a rental loss, "extra expense," 'soft cost," or other type of claim.[12] The court may direct the parties to file supplemental memoranda, conduct oral arguments and/or schedule evidentiary hearings, and undertake any other procedures it deems relevant and beneficial.

### VIII. Waiver of Demand for Appraisal

In their third issue, Appellants contend the trial court erred in finding they waived a demand for appraisal by availing itself of the judicial process. In support, Appellants present similar arguments — that their complaint raised one issue, the question of coverage for "soft costs," while their motion to compel appraisal concerned a different issue, the proper valuation of lost rents and "extra expenses." *See* Appellants' Brief at 29-31.

---

[12] We emphasize we offer no opinion on the merits of these questions.

Appellants also argue the court misinterpreted the policy language and erred in finding their motion to compel appraisal was filed late. We reiterate the policy's appraisal provision states that a demand for appraisal shall be "made within 60 days after receipt of proof of loss by [Appellee]." Commercial Property Insurance Policy at 14. The trial court found that under this provision, the 60-day period for requesting an appraisal was triggered on April 16, 2019, when Appellee issued its Partial Declination of Coverage Letter. Trial Ct. Op. at 4.

On appeal, Appellants aver the following: the only trigger for the 60-day filing period is Appellants' submission of a proof of loss. Appellants' Brief at 23. A proof of loss, however, is "not automatically required" under the Policy, as shown by a separate portion of the Policy, which provides, "Within [60] days **after [Appellee's] request,** [Appellants] shall provide [Appellee] with a proof of loss . . . ." *Id.* at 27. Appellants maintain that because no proof of loss was provided, the 60-day time period was never triggered, and thus their motion to compel appraisal was not untimely. *Id.* at 23-24. Appellants point out this was Appellee's position in the pleadings. *Id.* at 25, *citing* Appellee's Opposition to Appellants' Motion to Compel Appraisal at 5 ("[S]ince [Appellants have] not filed a proof of loss for the Claim, the conditions precedent for an appraisal have not been satisfied and therefore the demand is not ripe."). For the following reasons, we direct that on remand, the trial court shall reconsider this issue.

Appellants correctly point out that **in the pleadings** before the trial court, Appellee argued the predicate fact for seeking an appraisal was not satisfied, where Appellants had not filed a proof of loss for the claim, which was required by the terms of the policy. *See* Appellee's Opposition to Appellants' Motion to Compel Appraisal at 5. This issue — the timeliness of Appellants' demand for appraisal — however, was not raised at all at the hearing. The first time the trial court addressed this issue was in its opinion. On appeal, Appellee now advances a new position, inconsistent with its pleadings, that echoes the trial court's reasoning. *See* Appellee's Brief at 17 (arguing Appellants' claim, "that since it did not submit a proof of loss for its Total Claim, the 60-day time to demand an appraisal was not triggered[,]" "is directly at odds with the express terms of the Policy").

As this issue was not addressed at the hearing, we direct that on remand, the trial court shall also reconsider it.[13] Specifically, the court should consider Appellants' arguments concerning the plain language of the policy — that a demand for appraisal shall be made "within 60 days after receipt of proof of loss by the company," that a proof of loss is not mandatory, but rather may merely be requested by Appellee, and that in the absence of a filing of proof of loss, Appellants may demand appraisal at any time.

---

[13] We decline to find Appellants have waived any argument, as, again, the first time the trial court addressed timeliness was after the appeal was taken.

- 19 -

## IX. Conclusion

We conclude it is not apparent from the present record whether the trial court fully addressed the underlying question of which expenses fell under which category of claims, or the particular arguments presented by both parties. We reiterate the court addressed the timeliness of Appellants' motion to compel appraisal for the first time **after** Appellants filed the notice of appeal. Accordingly, we vacate the order denying the motion to compel appraisal and remand for reconsideration.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2022